IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

Evelyn LANDRON-RIVERA, et al.
    Plaintiffs,

    v.

Municipality of VEGA ALTA, et al.
    Defendants.

CIVIL NO. 03-1891 (PG)

**REPORT AND RECOMMENDATION**

    Plaintiffs Evelyn Landrón Rivera ("Landrón"), Doris Marixa Rivera Bruno ("Rivera"), and Ramon Lizardi Barreto ("Lizardi") bring forth an action against defendants under 42 U.S.C. §1983, alleging violations of their rights of association under the First Amendment of the U.S. Constitution, the Constitution of the Commonwealth of Puerto Rico, specifically Art. II, sections 1, 4, 6 and 7, and Article 1802 of the Puerto Rico Civil Code. Plaintiffs seek reinstatement, injunctive relief, and compensatory and punitive damages. Defendants, Municipality of Vega Alta, Jose Colon ("Colon") in his official capacity as mayor of Vega Alta and in his individual capacity, his wife Olga Torres ("Torres"), the conjugal partnership constituted by both ("Colon-Torres"), Benjamin Declet ("Declet"), his wife Jane Doe, the conjugal partnership constituted by both ("Declet-Doe"), Orlando Ramirez ("Ramirez"), his wife Lissette Chacón ("Chacón"), the conjugal partnership constituted by both ("Ramirez-Chacón"), and Lilliam Arroyo ("Arroyo"), now seek summary judgment. After reviewing the pertinent law and the facts in the light most favorable to the plaintiffs, the court concludes that defendants' motions for summary judgment must be **GRANTED**.

**I.    Summary Judgment Standard**[1]

    Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[1] The court notes that all parties have complied with Local Rules 56(b) and (c).

of law." Fed. R. Civ. P. 56( c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In order to defeat summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e). The court must view the record and all reasonable inferences in the light most favorable to the party opposing summary judgment. See id. If the court finds that some genuine factual issues remain, whose resolution could affect the outcome of the case, the court must deny the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 284 (1986). "The movant's burden is particularly rigorous when the disputed issue involves questions of motive or intent, since in these cases jury judgments about credibility are typically thought to be of special importance." Lipsett v. Univ. of P.R., 864 F.2d 881, 895 (1st Cir. 1988).

In a discriminatory employment action case, a plaintiff "will rarely, if ever, be able to produce a 'smoking gun' that provides direct, subjective evidence of an employer's animus. Rather, a plaintiff must try to convince the fact-finder to draw an inference from a broad array of circumstantial and often conflicting evidence..." Id. Even in these cases, however, the court will not refuse to grant summary judgment in favor of the defendant if the plaintiff's claim rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Suarez v. Pueblo Int'l Inc., 229 F.3d 49, 53 (1st Cir. 2000) (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

**II.     Procedural History and Factual Background**[2]

On June 24, 2005, defendants Declet, Declet-Doe, Ramirez, Chacón, Ramirez-Chacón, Arroyo, Colon, Torres, and Colon-Torres, in their personal capacities moved for summary judgment, attaching a statement of uncontested facts. (Docket Nos. 81 and 82 respectively). On July 5, 2005, the Municipality of Vega Alta and Colon in his official capacity also moved for summary judgment, attaching a statement of uncontested facts. (Docket Nos. 89 and 88 respectively). Both sets of defendants, in their personal and official capacities, subsequently joined in each others' arguments for summary judgment. (Docket No. 108). In their joint motions, the defendants contend that

---

[2] All facts described in this section and below are derived from the depositions and exhibits attached to the parties' pleadings and statements of disputed and undisputed facts.

**Case No. 03-1891 (PG)**               3

plaintiffs have not set out a *prima facie* case of political discrimination; that plaintiffs' positions were trust positions, terminable without cause; that plaintiffs' positions were policymaking in nature; and that defendants are entitled to qualified immunity.

On August 22, 2005, the plaintiffs submitted one (1) opposition for both summary judgment motions. (Docket No. 114). The plaintiffs also submitted two (2) separate oppositions to defendants' statements of contested facts. (Docket Nos. 112 and 113). Plaintiffs rebut defendants' arguments that they lack a *prima facie* case of political discrimination and assert that their positions were not policymaking in nature. On September 30, 3005, defendants in their personal capacities submitted their reply to plaintiffs' opposition. (Docket No. 122). The defendants also submitted, and the court accepted, a second statement of uncontested facts. (Docket No. 125). On October 3, 2005, the Municipality of Vega Alta and Colon in his official capacity replied to plaintiffs' opposition. (Docket No. 129). Plaintiffs filed one sur-reply to defendants' two replies. (Docket No. 133).

The facts not in dispute are as follows. Plaintiffs were municipal trust employees in Vega Alta under the administration of Juan Cruzado, former mayor of Vega Alta. (See Docket No. 88, ¶ 55). On October 24, 2001, Cruzado was arrested on federal charges, leaving vacant the position of mayor and president of the local Popular Democratic Party (PDP) chapter. (See Docket No. 88, ¶ 56; Docket No. 82, ¶ 103). The order of succession in Vega Alta's governing system dictated that Jose Colon assume the position of acting mayor. (See Docket No. 82, ¶ 104). Colon was appointed acting mayor in or around November 2001. (See id. at ¶ 60). Plaintiffs were trust employees under Cruzado's administration and continued performing their duties in the municipality under Colon. (See id. at ¶ ¶ 43, 99, 101).

Shortly after Cruzado's departure, the local PDP party began campaigns for the next chapter president. (See Docket. No. 88, Exh. 1, Landrón depo. p. 48, lines 17-25, p. 49, lines 1-5). Colon soon emerged as a candidate against Eliezer Gonzalez, the municipal administrator and Vice President of the local PDP party ("Gonzalez"). (See Docket. No. 82, ¶ 102). Plaintiffs were all supporters of Gonzalez. (See Docket. No. 82, ¶ ¶ 29-30; Docket No. 88, ¶ 40). On August 11, 2002, after several months of campaigning, Colon was elected local party president. (See Docket. No. 113,

**Case No. 03-1891 (PG)**                         4

¶ 1). On August 19, 2002, Lizardi and Landrón attended a meeting called by Colon requesting the resignation of all Directors who were trust employees. (See Docket. No. 82, ¶ 32). Plaintiff Lizardi submitted his letter of resignation. (See Docket No. 82, ¶ 100). Plaintiff Landrón did not. (See id. at ¶ 35). On August, 20, 2002, Rivera attended another meeting called by Colon requesting the same of non-Directors. (See id. at ¶ 66). Rivera did not submit her resignation. (See id. at ¶ 67). Instead Landrón and Rivera received dismissal letters on August 22, 2002. (See id. at ¶ ¶ 36, 68). Facts particular to each plaintiff are set forth below.

**III.    Legal Analysis**

As a general rule, the First Amendment protects public employees from adverse job decisions based solely on their political affiliation and beliefs. See Branti v. Finkel, 445 U.S. 507, 516-17 (1980). It is well-settled that when instituting a claim of political discrimination, the plaintiff bears the initial burden of producing sufficient evidence that his political affiliation was the substantial or motivating factor behind the challenged adverse employment action. See Mt. Healthy City Bd of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Gonzalez de Blasini v. Family Department, 377 F.3d 81, 85 (1st Cir. 2004). Plaintiffs must point to evidence on the record which could permit a rational fact-finder to conclude that their dismissals occurred and stemmed from politically based discriminatory animus. See Rivera Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994). Only once plaintiffs have satisfied their burden does the same shift to the employer to show that it would have taken the same action irregardless of political affiliation. See Mt. Healthy, 429 U.S. at 287. This is true with regards to trust employees[3] as well, save for those occupying Elrod-Branti type positions.

This case presents an interesting twist on a political discrimination claim. Plaintiffs and defendants in this case are of the same political party, the PDP. Nonetheless, the First Circuit has addressed this issue and confirmed that the analysis is the same. See Rodriguez-Rodriguez v. Munoz-Munoz, 808 F.2d 138, 143 (1st Cir. 1986) (applying the Mt. Healthy, Elrod-Branti, and

---

[3] A trust employee's position, unlike a career employee, is intertwined with policymaking and terminable without cause. A career employee has a property interest in his employment and can only be discharged for "good cause." P.R. Laws Ann. Tit. 3 §§1364(4), 1346 (1989).

**Case No. 03-1891 (PG)**                                        5

Jimenez Fuentes tests in a case of intra-party political discrimination); Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 76-77 (1st Cir. 2000).

Thus, the court's initial inquiry is whether plaintiffs have set forth specific facts sufficient to demonstrate a genuine issue for trial. In other words, is there a dispute of facts with the *prima facie* evidence presented? The court analyzes each plaintiffs' case in turn.

### A.   Plaintiffs' *Prima Facie* Case

The standard for setting out a *prima facie* case of political discrimination in the First Circuit has become increasingly stringent. See Gonzalez-Pina v. Rodriguez, 407 F.3d 425, 432 (1st Cir. 2005) (holding that mayor's awareness of plaintiff's support for a rival mayoral candidate in the primary was, by itself, insufficient to establish political animus); Gonzalez De Blasini, 377 F.3d at 85-86 (affirming the dismissal of a complaint where plaintiff was a well-known supporter of the NPP, had held a trust/confidential/policymaking position under the previous NPP administration, and defendant employer had expressed interest in giving plaintiff's position to a PDP member); Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 48 (1st Cir. 2004) (holding that statement of PDP mayor of intent to rid town of NPP activists was insufficient to generate genuine issues of material fact); and, Acevedo-Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993) (holding that plaintiffs were not conspicuous targets for discriminatory employment action merely because they played prominent roles in publicly and vocally supporting a former mayor).

#### 1.   Evelyn Landrón Rivera

In 2000, Landrón was an active participant in local politics. (See Docket No. 82, ¶ 3). Landrón ran for municipal assemblywoman under the PDP and won. (See id. at ¶¶ 3-4). Landrón did not swear into her elected position, however, because she accepted former mayor Cruzado's offer to be his Director of Human Resources. (See id. at ¶ 4-5). On January 9, 2001, Landrón began her position as HR Director. (See id. at 5). On that day, she received a letter stating that her position was one of trust, "freely appointed by the mayor and subject to removal by the same." (See id. at ¶ 6). After Colon assumed office, Landrón continued to perform her duties as HR Director. (See id. at ¶ 43).

Before the campaigns for presidency of the PDP got underway, Landrón had a conversation

with Colon. (See Docket No. 88, Exh. 1, Landron depo. p. 42, lines 8-16). Colon told Landrón that he was not interested in running for the presidency. Id. Landrón in turn told Colon that her loyalties lay with Gonzalez and she would support him. Id. Soon after, however, Colon decided to run for president of the party and this is when, according to Landrón, her relationship with Colon began to deteriorate. (See Docket No. 82, ¶ 45). Landrón alleges that she began to feel politically discriminated against.

Landrón cites several examples of alleged political discrimination in support of her suit. Landrón cites an article which came out in a local newspaper where Colon speaks of "obstacles" in his work group that needed to be removed for the benefit of the public. She understood Colon's reference of "obstacle" to include her. (See Docket No. 88, ¶ 5(d)). However, Landrón testified that her name was not in the article nor did she know of whom Colon was referring. Landrón also alleges that Colon said he would "chop the heads off" of any Gonzalez supporter. (See id. at 5(h)). She learned of this through a co-worker, Damian Pabon, who had heard of it from Declet, the municipal Director of Finance. However, Landrón admits that she never heard Colon say this nor did she know if Pabon received the information first hand. This is also an "instance" of political discrimination which she alleges against Declet. Again, Landrón did not hear it directly from Declet but only heard it second hand from another employee.

Landrón also submits that she was purposely left out of a meeting, and was late as a result but *did* ultimately attend. (See id. at ¶ 5(i)). Landrón admits that this meeting was not of great significance. Landrón asserts that it was difficult to set up meetings with the mayor even though other directors would meet with Colon as they pleased. She asserts that it took several weeks for her to finally meet with him and after much insistence. However, once she did meet with Colon, they met for three (3) days. (See id. at ¶ 10). Landrón also testified that she was summoned to a meeting on December 17, 2001, along with other trust employees. (See id. at ¶ 20). She alleges that Ramirez, president of the municipal legislature, admonished the group. Ramirez told the group that he would fire them or lower their salaries if they continued to bicker politically. Colon was present at the meeting and did nothing to stop Ramirez. Landrón understood this to mean that Colon approved of the remarks. Landrón also states that while Ramirez did not have the power to fire her,

he had the power to influence Colon.  Finally, Landrón alleges that Declet also discriminated against her politically when someone told her that Declet had mentioned that the Comptroller was investigating her. (See id. at ¶ 17).  This remark turned out to be true, but was not heard by Landrón directly, but rather by second hand.

In fact, Landrón further testified that she continued to work in her position under Colon for ten (10) months.  It was not until December 2001 that Landrón's relationship with Colon began to deteriorate and even so Landrón continued to work for him for another eight (8) months.  Lastly, Landrón accepts the majority of the facts in defendants' statement of undisputed facts.  In essence, Landrón admits that there is no dispute of fact as to the material issues surrounding politically based discriminatory animus.

A plaintiff must demonstrate specific facts of discriminatory animus.  The court notes that the record is replete with admissions of assumption on Landrón's part.  Asserting mere inequities and tacking on self-serving conclusions will not satisfy plaintiffs burden.  Similarly, the evidence must be presented that defendant was either the primary actor involved in, or a prime mover behind, the underlying violation.  Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999).  Landrón has not established that Declet or Ramirez were primary actors involved Colon's decision to dismiss her.  Therefore, the court finds that Landrón's assertions are nothing more than self-serving conclusions which do not create a dispute of facts.  Given that Landrón's claims do not establish a causal connection between her support for Gonzalez and her dismissal, the court recommends that defendants' summary judgment motions be granted as to Landrón's claims against the Municipality, Colon, in his personal and official capacity, Ramirez, and Declet.

Additionally, Landrón concedes that she has no claim against Torres, Chacón, or Arroyo. For that reason, the court recommends that defendants' summary judgment motion be granted as to Landrón's claims against Torres, Chacón, and Arroyo.

**2.      Ramon Lizardi Barreto**

In 2000, Lizardi ran for municipal assemblyman under the PDP.  (See Docket. No. 82, ¶ 70). Lizardi did not swear into his elected position, however, because he accepted former mayor Cruzado's offer to be his Director of Public Works.  (See id. at ¶ 71).  On January 9, 2001, Lizardi

**Case No. 03-1891 (PG)**                              8

began his position as Director of Public Works. (See id. at ¶ 72). On that day, he received a letter stating that his position was one of trust, "freely appointed by the mayor and subject to removal by the same." (See Docket No. 82, ¶ 74). After Colon assumed office, Lizardi continued to perform his duties. However, Lizardi began to feel discrimination at work. (See id. at ¶ 98).

Lizardi testified that Colon would refer to him as a "taliban." (See Docket No. 88, ¶ 31(f)). Lizardi expressed discomfort at being referred to by a word which he analogized to "terrorist" or "criminal." Lizardi testified, however, that Colon never called him a terrorist or criminal but that he understood it to imply something derogatory nonetheless. Lizardi also claims he was politically discriminated against by Colon because his work cellular phone was taken away from him. (See id. at ¶ 30(b)). Lizardi claims that the office cellular phones were taken from those who had them to be replaced. When the new phones came in, other employees received the new phone but not Lizardi. Lizardi called attention to this once and Colon told him that it was being given follow-up. Lizardi never had a work cellular phone again. Lizardi also claims that it was difficult to set meeting with Colon, and when he did get a meeting, he would have to wait two or three hours from the proposed meeting time. (See id. at ¶ 30(g)). Lizardi also claims that Colon began to detract authority from him and began coordinating projects with Lizardi's underlings instead of with him directly. (See id. at ¶ 30(c)). However, Lizardi does not have any direct proof or documentation of this. In fact, the only direct communication entered into exhibit is correspondence between Colon and Lizardi regarding Lizardi's second job as a musician. (See id. at ¶ ¶ 38-39). Colon was dissatisfied with the hours that Lizardi was keeping. Lizardi admits to taking time off but offered explanations for his absences. Lizardi also testified that he felt comfortable working with Colon from the time Colon was appointed to the time of Lizardi's departure in August. Lizardi stated that he continued to do his work and followed Colon's instructions.

Lizardi does not dispute these facts. Like Landrón, Lizardi has, in essence, admitted that there is no dispute as to a material issue in the case. However, and most importantly, Lizardi voluntarily submitted a letter of resignation on August 20, 2002. In the letter, Lizardi states that his resignation is effective August 22, 2002, the day which he alleges he was fired. The court finds this argument disingenuous. Lizardi cannot assert a claims of political discrimination based on an

adverse employment action given that he resigned.

While, Lizardi's assertions are self-serving conclusions and do not set forth *prima facie* evidence or a dispute of material facts sufficient for trial, his voluntary resignation speaks for itself. This very fact suggests to the court that Lizardi's claims are meritless. For such reason, the court recommends that defendants' summary judgment motion be granted as to Lizardi's claims against the Municipality and Colon, in his personal and official capacity.

Lizardi concedes that he has no claim against Torres, Declet, Ramirez, Chacón or Arroyo. For this reason, the court recommends that defendants' summary judgment motion be granted as to Lizardi's suit against Torres, Declet, Ramirez, Chacón and Arroyo.

### 3. Doris Marixa Rivera Bruno

On September 17, 2001, former mayor Cruzado appointed Rivera to the position of Special Assistant III. (See Docket No. 82, ¶ 46). Rivera's appointment letter stated that her position was a trust position "freely appointed by the mayor and subject to removal by the same." (See id. at ¶ 47). After Cruzado's departure, Rivera describes her relationship with Colon as cordial. Rivera felt she had a healthy relationship with Colon until after he announced his candidacy for president of the local PDP party, when the relationship began to change. (See id. at ¶ 61).

Rivera testified that she told Colon at some point that the fact that she was "associated with another" (in terms of her support of another candidate for the PDP presidency) did not mean she was not going to perform her functions as Special Assistant. (See Docket No. 88, ¶ 46). Rivera testified that she felt the need to say this because she felt Colon was beginning to abridge or thwart her duties. Rivera also testified that she felt politically discriminated against because she was no longer allowed to meet with Colon when she pleased. Id. During one conversation, Rivera told Colon that she needed to meet with him urgently to which he responded, "...don't worry, I'll see you before 2004." (See Docket No. 88, Rivera depo. p. 46, lines 9-12).

Rivera also alleges political discrimination against Declet and Arroyo, the municipal auditor, because they influenced Colon and were instrumental in her firing. Rivera asserts that Declet would mention in a derogatory manner a debt that she had with the municipality. (See Docket No. 88, ¶ 48). Even though Declet never said this to her directly, Rivera felt that it tarnished her image and

that this in itself was political discrimination. Rivera asserts that Arroyo discriminated against her by requesting documentation of her for a program of which she was not in charge. (See id. at ¶ 49). However, Rivera's further testimony reveals that she had, in fact, worked with the program and that Arroyo, as auditor, had the authority to request the type of paperwork requested. Finally, Rivera claims political discrimination against Torres, the first lady of the municipality, because Torres allegedly took away from her the ability to meet with the public. (See id. at ¶ 52).

The court finds again that these assertions are self-serving conclusions and not *prima facie* evidence of political discrimination. Citing mere inequity will not get a plaintiff past the *prima facie* hurdle. In this instance, Rivera, under the same rationale as Landrón and Lizardi, has not satisfied her burden. Merely producing evidence of affiliation with a political faction is not sufficient to withstand summary judgment. Thus, the court recommends that defendants' summary judgment motion be granted as to Rivera's claims against the Municipality, Colon, in his personal and official capacity, Declet, Arroyo and Torres.

Rivera concedes that she does not have a claim against Ramirez or Chacón. For this reason, the court recommends that defendants' summary judgment motion be granted as to Rivera' suit against Ramirez and Chacón.

**B.     Elrod-Branti Defense**

The court has already granted summary judgement for the defendants on the basis that plaintiffs failed to set forth *prima facie* evidence of political discrimination. However, assuming plaintiffs had satisfied their burden, and given that it is undisputed that plaintiffs' positions were of trust, defendants would have had to satisfy an Elrod-Branti defense.

The First Amendment rights of a trust employee are not violated if he is terminated solely because of his political affiliation from an employment that requires, as an essential element, a specific kind of political affiliation for the effective performance of the public office. See Elrod v. Burns, 427 U.S. 347, 360 (1976). The Elrod-Branti doctrine provides some protection for government officials to make employment decisions based on political affiliation. See Jimenez Fuentes v. Torres Gaztambide, 807 F.2d 236, 241 (1st Cir. 1986). "The First Amendment must yield to the vital interest of preserving representative government whenever elected officials choose to

replace underlings employed in 'policymaking' or 'confidential' positions." Cintron v. Cordero, 976 F.Supp. 110, 114 (D.P.R. 1997). The question of whether a position is subject to political discharge is left to the court. Flynn v. City of Boston, 140 F.3d 42, 46 (1st Cir. 1998).

The First Circuit has established a two-part test to aid the court in determining whether political affiliation is an appropriate requirement for the effective performance of the public office involved. Jimenez Fuentes, 807 F.2d at 241. For a position to fit the Elrod-Branti exception, both steps of the Jimenez Fuentes test must be satisfied. The first step is to ask whether the position at issue, no matter how policy influencing or confidential it may be, relates to partisan political interests. Id. The position need only involve decision making on issues where there is no room for political disagreement on goals or their implementation. Mendez-Palau v. Rohena-Betancourt, 813 F.2d 1255, 1258 (1st Cir. 1987).

The second step requires the court to determine whether the particular job resembles that of a "policymaker, a communicator, or a privy to confidential information." Jimenez Fuentes, 807 F.2d at 242. This step involves a further inquiry into the inherent powers and privileges of the position and not to the duties actually carried out by a particular employee. Id. at 242.

The First Circuit has stated that a job description is considered the best source for determining whether a particular position falls within the Elrod-Branti exception. Ortiz-Pinero v. Rivera-Arroyo, 84 F.3d 7, 13 (1st Cir. 1996). In reviewing the job description, the Court has looked to whether the duties assigned are broad or open ended or whether they convey power or discretion to take action.

There is sufficient evidence in the record to find that plaintiffs' positions were policymaking and political in nature. Landrón was Director of Human Resources, Lizardi was Director of Public works, and Rivera was special assistant to the mayor. Plaintiffs were originally appointed by Cruzado understanding that they had the mayor's confidence to represent him and implement his plan of action. Clearly these positions involve inherent duties where decision making, goals and implementation of strategy fall on political nature. See, e.g., Jimenez Fuentes, 807 F.2d at 242 (finding that the plaintiff responsible for developing and implementing public works programs fell under this category). Thus, there is no doubt that the position of director of human resources and

**Case No. 03-1891 (PG)**                       12

public works, as well as, the mayor's assistant can surely satisfy the Elrod-Branti test.

More so, the court has examined the classification plans for the Municipality of Vega Alta. The Plan clearly states that the Director of Human Resources is responsible for "the implementation of normative policies and procedures," is "free to make decisions within her work area," and can use her initiative and discretion in the performance of her duties." (See Docket. No. 82, Exh. 2). Similarly, the Director of Public Works is responsible for "managing, planning, coordinating, and supervising the construction, repair and public works...carried out in the municipality." (See Docket No. 82, Exh. 4). Lastly, the Special Assistant III is responsible for "actively helping the Mayor to formulate, implement, and enforce the municipality's public policy..." (See Docket. No. 32, Exh.33). These aspects of plaintiffs' positions undoubtedly satisfy the Elrod-Branti test.

Finally, given that there is no issue of fact as to the issue of political discrimination, the court need not enter into the qualified immunity analysis.

**C.     Conjugal Claims**

The defendants have moved on behalf of Torres, Chacón, and Jane Doe, and the conjugal partnerships of Colon-Torres, Declet-Doe, and Ramirez-Chacón, based on Articles 1802 and 1803 of the Puerto Rico Civil Code, which are before the court under supplemental jurisdiction. The court recommends that summary judgment be granted on these claims because said claims arise out of the same factual predicate as the claims of their respective husbands. Given that the husbands' claims no longer exist, neither can the conjugal claims nor the conjugal partnership claims. The court recommends that defendants' motion for summary judgment with respect to the conjugal claims of Torres, Chacón, and Jane Doe, and the conjugal partnership claims of Colon-Torres, Declet-Doe, and Ramirez-Chacón be granted

**D.     State law claims**

The plaintiff's supplemental state claims should be dismissed as well. The power of the federal court to hear and determine state law claims in non-diversity cases depends upon the presence of at least one substantial federal claim in the action. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991). Given that the federal claim in being dismissed, the court has no jurisdiction to entertain the state law claim.

**Case No. 03-1891 (PG)**                                    13

### IV.     Conclusion

Therefore, the court finds that plaintiffs have not set out *prima facie* evidence of political discrimination and have not created a dispute of material facts. Defendants are entitled to summary judgment as a matter of law. The court **RECOMMENDS** that defendants' summary judgment motions be **GRANTED, with prejudice**[4]**,** in their entireties (Docket Nos. 81 and 89).

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

**SO RECOMMENDED**.

In San Juan, Puerto Rico this 8th day of November 2005.

*S/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States Magistrate-Judge

---

[4] The court notes that the record and pleadings suggest entirely meritless claims. Plaintiffs assert continuous self-serving conclusions and repeatedly concede to not having claims again most of the parties involved. Lizardi's claims of being dismissed after voluntarily resigning could not be more telling. Anti-discrimination laws were not enacted to create or enforce a "general civility" code. Noviello v. City of Boston, 398 F.3d 76, 92 (2005).