IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EVELYN LANDRON-RIVERA, ET AL.,

     Plaintiffs,

         v.                           Civ. No. 03-1891(PG)

MUNICIPALITY VEGA ALTA, ET AL.,

     Defendants.

## OPINION AND ORDER

On August 19, 2003, plaintiffs Evelyn Landron-Rivera ("Landron"), Doris Marixa Rivera-Bruno ("Rivera"), and Ramon Lizardi-Barreto ("Lizardi") filed suit against defendants the Municipality of Vega Alta, Jose Colon ("Colon"), in his official capacity as mayor of Vega Alta and in his individual capacity, Olga Torres ("Torres"), the Conjugal Partnership Colon-Torres, Benjamin Declet ("Declet"), Jane Doe, the Conjugal Partnership Declet-Doe, Orlando Ramirez ("Ramirez"), Lissette Chacon ("Chacon"), the Conjugal Partnership Ramirez-Chacon, Lilian Arroyo ("Arroyo"), John Doe, and Richard Doe. Plaintiffs bring this action under 42 U.S.C. §1983, alleging violations of their rights of association under the First Amendment of the U.S. Constitution. They also bring supplemental law claims under the Constitution of the Commonwealth of Puerto Rico, specifically Art. II, sections 1, 4, 6 and 7, and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. Plaintiffs seek reinstatement, injunctive relief, as well as compensatory and punitive damages.

Before the Court is Magistrate Judge Gustavo A. Gelpi's[1] Report and Recommendation ("R&R") (Docket No. 136) regarding defendants' Motions for Summary Judgment (Docket Nos. 81 & 89.) For the following reasons, we **ADOPT IN PART** the Magistrate Judge's recommendations, **GRANT** defendants' motions, and dismiss the case.

---

[1] Recently, Magistrate Judge Gelpi was sworn in as District Judge for the District of Puerto Rico. This R&R was issued before that date.

Civ. No. 03-1891 (PG)                                               Page 2

## DISCUSSION

### I. <u>Standard of Review - Magistrate-Judge's Report and Recommendation</u>

Pursuant to 28 U.S.C. §§ 636(b)(1)(B); Fed.R.Civ.P. 72(b); and Local Rule 503; a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. <u>See</u> <u>Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.</u>, 286 F.Supp.2d 144, 146 (D.P.R. 2003). The adversely affected party may "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." <u>United States of America v. Mercado Pagan</u>, 286 F.Supp.2d 231, 233 (D.P.R. 2003)(<u>quoting</u> 28 U.S.C. §§ 636(b)(1).) If objections are timely filed, the District Judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." <u>Felix Rivera de Leon v. Maxon Engineering Services, Inc.</u>, 283 F.Supp.2d 550, 555 (D.P.R. 2003). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate", however, if the affected party fails to timely file objections," 'the district court can assume that they have agreed to the magistrate's recommendation'." <u>Alamo Rodriguez</u>, 286 F.Supp.2d at 146 (<u>quoting</u> <u>Templeman v. Chris Craft Corp.</u>, 770 F.2d 245, 247 (1st Cir. 1985).

### II. <u>Summary Judgment</u>

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>See</u> <u>Sands v. Ridefilm Corp.</u>, 212 F.3d 657, 660 (1st Cir. 2000). To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 306 (1st Cir. 1997), through definite and competent evidence. <u>Maldonado-Denis v. Castillo Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. <u>Suarez v. Pueblo Int'l</u>, 229 F.3d 49, 53 (1st Cir. 2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect

Civ. No. 03-1891 (PG)                                                    Page 3

an otherwise properly supported motion for summary judgment." <u>Anderson v.</u>
<u>Liberty Lobby, Inc.</u>. 477 U.S. 242, 247-48 (1986). At the summary judgment
juncture, the Court must examine the facts in the light most favorable to the
non-movant, indulging that party with all possible inferences to be derived
from the facts. <u>See</u> <u>Rochester Ford Sales, Inc. v. Ford Motor Co.</u>, 287 F.3d 32,
38 (1st Cir. 2002).

### III. <u>Undisputed Facts</u>

Having reviewed the record, the Magistrate Judge's factual findings and
the objections thereto, the Court finds that the following facts are
undisputed:

1. Plaintiffs were municipal trust employees in Vega Alta under the
   administration of Juan M. Cruzado ("Cruzado"), former mayor of Vega
   Alta. (<u>See</u> Docket No. 82, Exhibits 2, 5, 7, 8, 28, 33, 45, 51;
   Docket No. 88 at ¶¶ 45, 55; Docket No. 97, Exhibit 5, 30, 48;
   Docket No. 99, Exhibit 3.)

2. On October 24, 2001, Cruzado was arrested on federal charges,
   leaving vacant the position of mayor and president of the local
   Popular Democratic Party (PDP) chapter. (<u>See</u> Docket No. 88, ¶ 56;
   Docket No. 82, ¶ 103 & Exhibit 13 at lines 19-20)(<u>See also</u> Criminal
   Case No. 3:01-cr-00690(JAF)).

3. When Cruzado was arrested defendant Colon assumed the position of
   acting Major. (Docket No. 82, ¶60; Exhibit 36 at 34 lines 5-7.)

4. Plaintiffs were trust employees under Cruzado's administration and
   continued performing their duties in the municipality under Colon.
   (Docket No. 82, ¶¶ 43, 99, 101; Exhibits 27, 58.)

5. Shortly after Cruzado's departure, the local PDP party began
   campaigning for the next chapter president. (<u>See</u> Docket. No. 88,
   Exhibit 1 at 48, lines 1-5, 17-25 & 49). Colon soon emerged as a
   candidate against Eliezer Gonzalez ("Gonzalez"), the municipal
   administrator and Vice President of the local PDP party. (<u>See</u>
   Docket. No. 82, ¶ 102).

6. Plaintiffs all supported Gonzalez. (<u>See</u> Docket. No. 82, ¶¶ 29-30;
   Exhibit 14 at 49 line 8; Exhibit 15 at 80 lines 3-5; Docket No. 88,
   ¶ 40; Exhibit 2, at 85, lines 17-19, 20-23; at 86, lines 3-7;
   Exhibit 5 at 39 lines 1-22.)

7. On August 11, 2002, after several months of campaigning, Colon was
   elected local party president. (<u>See</u> Docket No. 88, Exhibit 2 at 17,
   lines 24-25.)

8. On August 19, 2002, Lizardi and Landron attended a meeting called
   by Colon requesting the resignation of all Directors who were trust
   employees. (<u>See</u> Docket. No. 88, Exhibit 1 at 69, lines 8-24; at 70,
   lines 1-4.)

Civ. No. 03-1891 (PG)                                                    Page 4

9. The record reflects that plaintiff Lizardi submitted a letter of
    resignation whereas Landron did not. (See Docket No. 82, ¶ 100;
    Exhibit 59[2]; Docket No. 82, Exhibit 17; Docket No. 112, Exhibit 1
    at 80, lines 2-7.)

10. Landron received a dismissal letter on August 22, 2002. (Docket
    No. 97, Exhibit 20.)

11. On August 20, 2002, Rivera attended another meeting called by Colon
    requesting the resignation of non-Directors. (Docket No. 82,
    Exhibit 42.)

12. Rivera did not submit her resignation. (Id.) Rivera received a
    dismissal letter on August 22, 2002. (Docket No. 97, Exhibit 43.)

13. Defendant Colon testified that plaintiffs' resignations were
    solicited because he had lost trust in them. (Docket No. 112,
    Exhibit 1 at 12, lines 15-22; at 15, lines 2-25, at 19, lines 1-10,
    at 24, lines 2-20, at 54, lines 17-24, at 55, lines 6-8 & 22-25;
    at 60, lines 10-11; at 73, lines 19-23; at 75, lines 9-10; at 77;
    at 83, lines 22-25; at 84, lines 1-2; at 85, lines 21-23.)

14. Others who supported Gonzalez were not fired or asked to leave.
    (See Docket No. 112, Exhibit 1 at 25, at 92, lines 5-13.)

## IV. **Analysis**

The Magistrate Judge concluded that plaintiffs had failed to set forth
a prima facie case of political discrimination. (See R&R, Docket No. 136 at
4-10.) Furthermore, the Magistrate determined that even assuming that
plaintiffs had satisfied their prima facie burden, given that it is undisputed
that plaintiffs' positions were of trust, defendants would have satisfied an
Elrod-Branti defense. Accordingly, he recommends that summary judgment be
granted as to the federal claim. Finally, he recommends that summary judgment
be granted as to the conjugal claims and that the Court dismiss the state law
claims.

Plaintiffs object to the Magistrate Judge's recommendations arguing that

---

[2] Plaintiff Lizardi's letter of resignation was filed in Spanish and no
certified translation was filed afterwards. The Court is aware that in "collecting
a record for summary judgment a district court must sift out non-English materials,
and parties should submit only English-language materials. Estades-Negroni v.
Associates Corp. of North America, 359 F.3d 1, 2 (1st Cir.2004)(citing
United States v. Rivera-Rosario, 300 F.3d 1, 6 (1st Cir.2002). Nevertheless, there
are other instances in the record that support the fact that Lizardi submitted a
letter of resignation whereas Ladron did not. (Docket No. 82, Exhibit 17.)
Therefore, the Court will not take issue at this time with the fact that the letter
was submitted in Spanish. Cf. Torres Santa v. Rey Hernandez, 279 F.Supp.2d 124,
128 (D.P.R. 2003).

he failed to consider all the statements in evidence made by the parties in support of plaintiffs' prima facie case.  As to the Elrod-Branti defense, plaintiffs argue that it is inapplicable to the their case.  Specifically, they argue that Mayor Colon testified that persons in their positions could not be removed for political reasons. Furthermore, they argue that pursuant to Colon the term "of free selection and removal" does not include partisan politics. Lastly, plaintiff Rivera takes issue with the fact that the Magistrate Judge considered a document identified as Exhibit 33 to Docket No. 82 which plaintiffs had objected to[3] because it is an unofficial document and up to date has not been approved by the Municipality of Vega Alta.  Plaintiffs insist it must be stricken and should not have been considered by the Magistrate Judge to establish an Elrod-Branti defense. (See Docket No. 139.)

     To the contrary, defendants argue that all the statements in evidence were in fact taken into consideration by the Magistrate Judge. They claim that those that were not mentioned in the R&R are completely irrelevant mischaracterized, and self-serving conclusions or general assumptions that even if taken as true do not establish a political discriminatory animus. As to the Elrod-Branti defense, defendants argue that indeed former Mayor Colon's testimony was consistent in that he dismissed plaintiffs because he lost trust in them and not because of their political affiliation.  Furthermore, they aver that plaintiffs' contention that the Elrod-Branti defense does not apply to plaintiff Rivera because the Magistrate Judge considered Exhibit 33 of docket 82 is misplaced. Defendants posit that Mrs. Rivera testified during her deposition that the job description attached as Exhibit 33 is an accurate description of her functions. (Docket 82, Exhibit 34, lines 11-25.) Defendants explain that they are not relying on the document as the best evidence to establish her duties but that in light of her own testimony that she performed the duties identified in the document, it can be used to determine whether her position fits the Elrod-Branti defense requirements.  Lastly, defendants argue that by limiting her argument to only objecting to the use of Exhibit 33, plaintiff Rivera has waived any other arguments and has failed to show that her position does not meet the Elrod-Branti exception.

_____

[3] See Docket No. 112 at page 6, ¶ 51.

     Having reviewed the record, we agree with the Magistrate Judge that
plaintiffs' positions are policymaking trust positions that fit the Elrod-
Branti framework.

     The First Amendment protects public employees from adverse job decisions
based solely on their political affiliation and beliefs. The Supreme Court has
held that government workers are constitutionally protected from dismissal for
refusing to take an oath regarding their political affiliation, for publicly
or privately criticizing their employer's policies, for expressing hostility
to prominent political figures, or, except where political affiliation may be
considered an appropriate job qualification, for supporting or affiliating
with a particular political party. See Board of County Com'rs, Wabaunsee
County, Kan. v. Umbehr, 518 U.S. 668, 675 (1996)(internal citations omitted).
See Elrod v. Burns, 427 U.S. 347(1976). Under no circumstances may the
government "deny a benefit to a person on a basis that infringes his
constitutionally protected ... freedom of speech' even if he has no
entitlement to that benefit. Umbehr, 518 U.S. at 674(quoting Perry v.
Sindermann, 408 U.S. 593, 597(1972)). "Like most general rules, this rule
admits [] certain well-defined exceptions. One such exception is reserved for
instances in which political affiliation is an 'appropriate requirement for
the effective performance of the public office involved'." Galloza v. Foy, 389
F.3d 26, 28(1st Cir.2004)(quoting Branti v. Finkel, 445 U.S. 507, 518 (1980)).
Accordingly, as a prerequisite for discharging an employee for political
reasons, a public employer "must demonstrate that political affiliation is an
appropriate requirement for the position in question. This means, in effect,
that the employer must show that the position is confidential or policymaking
in nature." Galloza, 389 F.3d at 28-29 (citing Elrod, 427 U.S. at 362-63,
367). The Court of Appeals for the First Circuit has established a two-pronged
test to determine whether the position at issue is confidential or
policymaking in nature. Galloza, 389 F.3d at 29.

     The first prong considers "whether the agency employing the plaintiff
handle[s] matters potentially subject to partisan political differences," and
should permit a tentative conclusion about the extent to which the particular
position has the capacity to "influence the resolution of such matters."
Galloza, 389 F.3d at 29 (quoting Mendez-Palou v. Rohena-Betancourt, 813 F.2d

Civ. No. 03-1891 (PG)                                            Page 7

1255, 1258 (1st Cir.1987).  This prong "is satisfied ... as long as the position potentially "involve[s] government decision making on issues where there is room for political disagreement on goals or their implementation." Galloza, 389 F.3d at 29(quoting Jimenez-Fuentes v. Torres Gaztambide, 807 F.2d 236, 241-42 (1st Cir.1986).

        The second prong "necessitates a detailed examination into whether the specific responsibilities of the position sufficiently resemble those of a policymaker or office-holder whose functions are such that party affiliation is an appropriate criterion for tenure." Galloza, 389 F.3d at 29 (citations omitted).  Indeed, the "nature of the responsibilities is critical." Id. (quoting Elrod, 427 U.S. at 367).  In its analysis, the Court should consider several factors including "the extent to which the position involves supervision and control over others, the degree to which the position confers authority to speak in the name of higher-ups who themselves are policymakers, and the influence of the position over programs and policy initiatives." Galloza, 389 F.3d at 29-30 (citing Jimenez-Fuentes, 807 F.2d at 242.) The Court should also factor in the "relationship of the position to elected officials, party leaders, and partisan politics." Galloza, 389 F.3d at 30 (citations omitted). Lastly, "consideration should ... be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." Id. (quoting Elrod, 427 U.S. at 368).  The "inquiry focuses not on what functions a particular occupant of the position may in fact carry out from time to time, but, rather, on the essential attributes of the position itself. Galloza, 389 F.3d at 30 (citing O'Connor v. Steeves, 994 F.2d 905, 911 (1st Cir.1993); Jimenez-Fuentes, 807 F.2d at 242.) Accordingly "if a formal job description exists, it is important for an inquiring court to look to the specifics of that document [because] [a]n employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position." Galloza, 389 F.3d at 30 (quoting Elrod, 427 U.S. at 368); see Jimenez-Fuentes, 807 F.2d at 242. Indeed, the First Circuit has stated that a job description is considered the best source for determining whether a particular position falls within the Elrod-Branti exception. See Ortiz-Pinero v. Rivera-Arroyo, 84 F.3d 7, 13 (1st Cir. 1996). "When all is said and done, the determination as to whether a particular office is

Civ. No. 03-1891 (PG)                                                    Page 8

policymaking or confidential in nature, so as to make political affiliation an appropriate requirement for holding it, is fact-specific." <u>Galloza</u>, 389 F.3d at 29.

Here it is undisputed that the Municipality of Vega Alta handles matters subject to partisan political differences. Therefore, the first part of the test is met. As to the second prong, the Magistrate Judge found that there is sufficient evidence in the record to find that plaintiffs' positions fit the Elrod-Branti test. Landrón was the Director of Human Resources, Lizardi was Director of Public works, and Rivera was a special assistant to the mayor. All three were originally appointed by Cruzado with the understanding that they had the mayor's confidence to represent him and implement his plan of action. The record clearly shows that they were appointed to trust positions of free selection and removal under Cruzado's administration. Furthermore, the evidence shows that these positions involved inherent duties where decision making, goals, and implementation of strategy are of a political nature.

Pursuant to the classification plans for the Municipality of Vega Alta, which the Magistrate Judge examined[4], the Director of Human Resources is responsible for "the implementation of normative policies and procedures," is "free to make decisions within her work area," and can use her initiative and discretion in the performance of her duties." (<u>See</u> Docket. No. 82, Exhibit 8.) Clearly Landron, as Director of Human Resources, acted as an adviser to the Mayor and formulated plans for the implementation of broad goals, particularly the Municipality's policy regarding human resources. <u>Galloza</u>, 389 F.3d at 30. The essential attributes of the position itself imply that there can be no room for conflicting views as to what policy should be implemented. <u>See</u> <u>Galloza</u>, 389 F.3d at 29 (citation omitted). Landron had authority to speak in the Mayor's name who is the policymaker for the Municipality and the elected official in charge of implementing public policy. Accordingly, Landron had influence over programs and policy initiatives. <u>See</u> <u>id.</u> at 29-30. This is clearly an example of a situation in which trust is essential between the person holding such position and the Mayor.  Colon testified that he had lost

---

[4] <u>See</u> Docket No. 82, Exhibits 8 & 33.

trust in Landron and that this was why he asked her to resign. (Docket No. 112, Exhibit 2.) Colon's testimony supports the conclusion that the reason for the dismissal was not because of political affiliation. Nevertheless, even if it had been, Colon's lack of trust in such an important policymaker clearly falls within the Elrod-Branti exception.

Likewise, the Director of Public Works (Lizardi's position) is responsible for "managing, planning, coordinating, and supervising the construction, repair and public works...carried out in the municipality." (See Docket No. 82, Exhibit 8). The job description states that the "employee works under the general supervision of the Mayor and/or higher-level official [sic]. (Id.) Furthermore, the employee in this position "uses his or her discretion to carry out the duties of the position." (Id.) The Director of Public Works "participates in the establishing of priorities for municipal public works". (Id.) Additionally, he is "the liaison between the Municipality and private enterprise [sic] as regards employment needs." (Id.) Finally, this position is classified as a trust service position for the Municipality of Vega Alta. (Id.) In sum, Lizardi had to follow Colon's directives with regards to the works that had to be done within the Municipality pursuant to the public policy to be implemented. Colon testified that the reason he lost trust in Lizardi was because he was implementing the policy of the Municipality in a way contrary to his instructions as acting Mayor. (Docket No. 112, Exhibit 1 at 15 & 24.) Clearly, this is a situation in which political affiliation may be considered an appropriate requirement for the effective performance of the public office involved. See, e.g., Jimenez Fuentes, 807 F.2d at 243 ("primary function of any local governmental entity is the provision of services" and ..."[e]lections often turn on the success or failure of the incumbent to provide these services")(citation omitted).

Lastly, the Special Assistant III is responsible for "actively helping the Mayor to formulate, implement, and enforce the municipality's public policy..." (See Docket. No. 82, Exhibit 33; Exhibit 34, lines 11-25.) The job description states that the employee "[u]ses his or her own judgment and discretion to perform the duties of the position". (Docket No. 82, Exhibit 33.) As part of the skills required for the position, a Special Assistant III must have "[c]onsiderable understanding of the Municipality's public policy."

Civ. No. 03-1891 (PG)                                             Page 10

(Id.) Finally, it is classified as a trust service positions for the Municipality of Vega Alta. (Id.) Clearly, Rivera's position satisfies the Elrod-Branti test.

There is no doubt that plaintiffs' positions were involved in policy as implementers and spokespersons of the same. See Galloza, 389 F.3d at 30. They were all mid-to upper level officials who were significantly connected to policy making. See Flynn, 140 F.3d at 45. Defendant Colon asked plaintiffs to resign precisely because he had lost trust in them and those positions required that its occupants have the mayor's trust to properly implement the municipal policies and goals. The record shows that Mayor Colon knew he could not remove them for political reasons. As defendants argue, Colon's testimony was consistent in that he dismissed plaintiffs because he lost trust in them and not because of their political affiliation[5]. Accordingly, because we find that the positions at issue are confidential and policymaking in nature, we grant defendants' motions for summary judgment[6]. See Galloza, 389 F.3d at 32 ("Where, as here, the holder of a position is deeply involved in policy, even if only as an implementer or agency representative, no more is exigible to satisfy the Elrod-Branti analysis.)

Finally, as the Magistrate Judge concluded, there being no issue of fact

_____

[5] Plaintiff Rivera's argument that Exhibit 33 of Docket No. 82 must be stricken and should not have been considered by the Magistrate Judge to establish an Elrod-Branti defense does not alter the Court's conclusion. As defendants argued, Rivera testified during her deposition that the class specification attached as Exhibit 33 is an accurate description of her functions. (Docket 82, Exhibit 34, lines 11-25.) In light of her own testimony that she performed the duties identified in the document, it can be used to determine whether her position fits the Elrod-Branti defense requirements.

[6] The Magistrate Judge also found that the parties had not met their burden of establishing a prima facie case of discrimination and therefore recommended grating defendants' motion for summary judgment. Because we find that plaintiffs' positions are trust positions, we need not discuss whether plaintiffs proved their prima facie case. Notwithstanding, having reviewed the record, we agree with the Magistrate Judge that plaintiffs have failed to proffer evidence to show that the adverse employment action was motivated because of their political affiliation. Self-serving conclusions and unsupported speculations are insufficient to withstand a properly supported motion for summary judgment. It is well-settled that plaintiffs must make a fact-specific showing that a causal connection exists between the adverse treatment and his political affiliation. Aviles-Martinez v. Monroig, 963 F.2d 2, 5 (1st Cir. 1992). Moreover, it is plaintiffs who bear the initial burden of producing sufficient evidence that their political affiliation was the substantial or motivating factor behind the challenged adverse employment action. See Mt. Healthy City Bd of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Gonzalez de Blasini v. Family Department, 377 F.3d 81, 85 (1st Cir. 2004). Here, there is no such evidence to support plaintiffs' prima facie case.

Civ. No. 03-1891 (PG)                                              Page 11

as to the issue of political discrimination, the court need not enter into the qualified immunity analysis.

    **V.**   **Supplemental Law Claims**

    Plaintiffs bring this action alleging violations of their rights under the Constitution of the Commonwealth of Puerto Rico, specifically Art. II, sections 1, 4, 6 and 7, and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. Having dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over plaintiffs' supplemental jurisdiction claims. See Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir. 1998)("Certainly, if the federal claims are dismissed before trial, . . ., the state claims should be dismissed as well); Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir.1995)[7]

**CONCLUSION**

    WHEREFORE, the Court **ADOPTS IN PART** the Magistrate Judge' R&R **(Docket No. 136)** and **GRANTS** defendants' motions as to the political discrimination claim **(Docket No. 81 & 89.)** Judgment shall be entered dismissing the federal claim with prejudice and the state law claims without prejudice.

    **IT IS SO ORDERED.**
In San Juan, Puerto Rico, December 6, 2006.

                                          S/JUAN M. PEREZ-GIMENEZ
                                        U. S. DISTRICT JUDGE

---

[7] The Magistrate Judge recommends that the Court grant summary judmgnet as to the claims on behalf of Torres, Chacón, and Jane Doe, and the conjugal partnerships of Colon-Torres, Declet-Doe, and Ramirez-Chacón, based on Articles 1802 and 1803 of the Puerto Rico Civil Code. Because we decline to excercise supplemental jurisdiction, the Court rejects this part of the R&R.